IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No.: _____

TOM FETZER, in his individual capacity )
as a registered voter of New Hanover )
County and in his capacity as Chairman )
of the North Carolina Republican Party; )
CHARLES F. TYSON, Jr., in his )
individual capacity as a registered voter )
of Craven County and in his capacity as )
Chairman of the Craven County )
Republican Party; SUZANNE RUCKER, )
in her individual capacity as a registered )
voter of Cumberland County and in her )
capacity as Chairman of the Cumberland )
County Republican Party; LARRY )
FORD, in his individual capacity as a )
registered voter of Rutherford County )
and in his capacity as Chairman of the )
Rutherford County Republican Party; A. )
DEAN LAMBETH, in his individual )
capacity as a registered voter of New ) **VERIFIED COMPLAINT; MOTIONS FOR**
Hanover County; and GARLAND ) **TEMPORARY RESTRAINING ORDER,**
SHEPHARD, in his individual capacity ) **PRELIMINARY INJUNCTION, AND**
as a registered voter of Edgecombe ) **PERMANENT INJUNCTION; AND**
County and in his capacity as a ) **MOTION FOR EXPEDITED DISCOVERY**
Republican candidate for NC House )
District 23, )
)
)
                Plaintiffs, )
)
vs. )
)
GARY BARLETT, in his official )
capacity as Executive Director of the )
North Carolina State Board of Elections; )
and LARRY LEAKE, ROBERT )
CORDLE, ANITA EARLS, CHARLES )
WINFREE, and WILLIAM PEASLEE, )
in their official capacities as Members of )
the North Carolina State Board of )
Elections, )
                Defendants. )

Plaintiffs, for their Complaint against defendants, state and allege as follows:

## I. PRELIMINARY STATEMENT

This is an action seeking relief from this Court to prevent the violation of federally protected rights of North Carolina voters as a result of malfunctioning voting equipment being used throughout the State of North Carolina. Defendants have been aware of the questionable accuracy of the voting system at issue prior to the onset of the 2010 elections but have failed to take any action to effectively protect the rights of North Carolina voters to have their votes accurately counted. Instead, defective touchscreen voting equipment is thwarting the ability of voters attempting to vote for Republican candidates to have their votes registered as such. In addition, this defective voting equipment threatens the ability of voters using touchscreen equipment to cast a secret ballot because voters using such equipment must effectively reveal their voting intentions to elections officials when seeking assistance regarding the malfunctioning machines. All North Carolina voters, regardless of party affiliation, have the right to have their votes counted accurately and to keep their candidate and party preferences private. The defective voting equipment approved and used by defendants is depriving classes of voters from the equal protection of the laws. The plaintiffs therefore seek a temporary restraining order as well as preliminary and permanent injunctive relief:

    1. Requiring defendants to order all county and local boards of elections under their control to provide written and oral notice to every voter who votes on the voting equipment known as the iVotronic touchscreen voting machines of the problems that have occurred with Republican votes and instructing voters prior to their entry into the voting enclosure to carefully review their ballot for accuracy when given the opportunity to do so;

2. Requiring defendants to preserve all data on the iVotronic Personal Electronic programs, touchscreen equipment, ballot tabulators, and ballots, including metadata and source codes and all other electronic data or programs that might reflect calibration of each such touchscreen voting machine, as more specifically set forth in the Prayer for Relief;

3. Requiring defendants to keep a record of complaints by voters regarding the iVotronic voting machines including but not limited to the identity of the voter, the time the voter voted, the specific voting machine used by the voter, and the nature of the voter's complaint; and

4. Directing defendants to certify to the Court no later than 5:00 p.m. on Monday, November 1, 2010, that all iVotronic voting machines operating in the State of North Carolina are properly calibrated and that no iVotronic un-calibrated or mis-calibrated voting machine is reflecting a vote that is contrary to the intent of the voter.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), and 1357.

2. The venue in this district is proper under 28 U.S.C. § 1391(b).

## III. PARTIES

3. Plaintiff Tom Fetzer is a citizen of the United States and the State of North Carolina. He is a registered voter of New Hanover County where iVotronic voting equipment is used. Fetzer is also the Chairman of the North Carolina Republican Party ("NCGOP" or "Party").

4. Plaintiff Charles F. Tyson, Jr. is a citizen of the United States and the State of North Carolina. He is a registered voter of Craven County where iVotronic voting equipment is used. Tyson is also Chairman of the Craven County Republican Party.

3

5. Plaintiff Suzanne Rucker is a citizen of the United States and the State of North Carolina. She is a registered voter of Cumberland County where iVotronic voting equipment is used. Rucker is also Chairman of the Cumberland County Republican Party.

6. Plaintiff Larry Ford is a citizen of the United States and the State of North Carolina. He is a registered voter of Rutherford County where iVotronic voting equipment is used. Ford is also Chairman of the Rutherford County Republican Party.

7. Plaintiff A. Dean Lambeth is a citizen of the United States and the State of North Carolina. He is a registered voter of New Hanover County where iVotronic voting equipment is used.

8. Plaintiff Garland Shephard is a citizen of the United States and the State of North Carolina. He is a registered voter of Edgecombe County and is also a Republican candidate for NC House District 23.

9. Plaintiffs are all registered to vote as Republicans. Moreover, plaintiffs all intend to vote or have voted or attempted to vote for one or more Republican candidates during the 2010 North Carolina general election.

10. Plaintiffs bring this action on behalf of themselves and all other voters who reside in counties which use iVotronic voting equipment.

11. Defendant Gary Bartlett is being sued in his official capacity as the Executive Director of the State Board Elections in which he is charged with administering the election laws of the State of North Carolina. The State Board of Elections is an agency of the State of North Carolina with its headquarters in Wake County.

12. Defendants Larry Leake, Robert Cordle, Anita Earls, Charles Winfree and William Peaslee are current members of the State Board of Elections and are being sued in their

official capacity as members of the Board of Elections. The State Board of Elections is charged with administering the election laws of the State of North Carolina.

13. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, plaintiffs bring this action on their behalf and on behalf of all other persons similarly situated. The class which plaintiffs seek to represent in this action includes voters who intend to vote for Republican candidates for any office in the 2010 elections. There are questions of law and fact common to the class which predominate over any other questions affecting the individual members of this class, and the claims of the plaintiffs are typical of the claims of the class.

14. The defendants have acted, or refused to act, and will continue to act or refuse to act on grounds generally applicable to the class thereby making appropriate injunctive or declaratory relief with respect to the class as a whole. The class is so numerous that joinder of all members of the class is impracticable. Separate actions by individual members of the class are impracticable and would create a risk of inconsistent adjudication with respect to individual members of the class that would establish incompatible standards of conduct for defendants.

15. Questions of law and fact common to the members of the class predominate over any questions affecting only an individual member or members and a class action is superior to other available methods for a fair and efficient adjudication of the controversy. The plaintiffs will fairly and adequately represent and protect the interest of the class. The undersigned counsel for the named plaintiffs are experienced litigators in connection with voting rights litigation and class actions.

## IV. GENERAL ALLEGATIONS

16. Early voting for the 2010 North Carolina general election began on October 14, 2010. Contests in the 2010 general election include U.S. Senate, North Carolina House of Representatives, North Carolina Senate, and numerous county, local, and judicial elections.

17. Several different types of voting equipment have been certified for use by the North Carolina Board of Elections including optical scan equipment and touch screen equipment, among others. Optical scan ballots require a voter to physically mark a physical ballot to record his or her choice in any given contest. Touchscreen equipment requires a voter to touch an electronic screen to record his or her choice. One type of touchscreen voting equipment is the iVotronic touchscreen voting machine which is at issue in the instant action. Upon information and belief, thirty-five (35) North Carolina counties use the iVotronic equipment during early voting. The iVotronic equipment is manufactured by a company called ES&S but maintained in most counties by a company called PrintElect. Recent news media reports in North Carolina disclosed close relationships between the owner of PrintElect and Democrat officials.

18. Many states consider touchscreen voting equipment to be unreliable and the trend is to ban them. According to the organization verifiedvoting.org, the following states have banned or restricted touchscreen voting: California, Florida, Iowa, Maryland, Minnesota, New Hampshire, New Mexico, Rhode Island, Tennessee, and Virginia.

19. Voters in counties that use the iVotronic system cast their vote by marking a computer touchscreen. The screen reflects a location for straight ticket voting as well as locations for votes in all other contests. In the area for straight ticket voting, the Democrat party is listed in a location directly above the Republican party. Similarly, for partisan races, the Democrat candidate is listed in an area located above the Republican candidate.

20. Prior to voting, the touchscreen must be calibrated so that the vote recognized by the touchscreen equipment corresponds to the area on the screen actually touched by the voter. Upon information and belief, touchscreens that are not properly calibrated tend to record the voter's intended vote on an area on the screen that is above the actual point on the screen touched

by the voter. Thus, on touchscreens that are not properly calibrated, a voter who touches the screen in a space for a straight Republican ticket or for a Republican candidate may actually have his or her vote recognized by the touchscreen in the area above the point on the screen actually touched by the voter. Thus, voters voting on un-calibrated or improperly calibrated machines may have their votes recognized as a vote for the Democrat party or a Democrat candidate even though they intended to touch the lower area to vote for the Republican party or candidate. Attached as Exhibit 1 is a declaration by forensic computer analyst expert Giovanni Masucci ("Masucci Declaration") providing some analysis on the issue of un-calibrated and mis-calibrated touchscreen voting machines.

21. Upon information and belief, defendants were well aware of the problems of un-calibrated and improperly calibrated touchscreens improperly recording voter intent before the 2010 general election. Upon information and belief, the State Board or its agents received statements regarding the inaccurate nature of touchscreen voting and expressed concerns regarding the problem because of the relatively longer ballot for the 2010 general election.

22. Plaintiff Fetzer began receiving complaints from voters regarding the iVotronic voting machines soon after the early voting period began. Specifically, voters complained that when they attempted to vote for a Republican candidate, the machine would register the vote for the Democrat instead. Voters stated that it took multiple attempts to finally get the machine to register the vote as a Republican vote. Other voters complained that when they attempted to vote a straight Republican ticket, the vote would be registered as a straight Democratic ticket instead. Voters complained about these issues in multiple polling places in multiple counties.

23. In the short time available before the November 2, 2010 general election, plaintiffs have been able to accumulate affidavits or declarations from a number of voters who

have registered complaints. Upon information and belief, the State Board of Elections was well aware of complaints during the early voting period by voters who intended to vote Republican but instead had their vote on the touchscreen equipment reflected as votes for Democrats. Upon information and belief, the State Board has received no or far fewer complaints from voters who intended to vote a straight Democrat ticket or for Democrat candidates who instead had their vote reflected on the touchscreen as a Republican vote. Upon information and belief, the reason for the discrepancy is because improperly calibrated touchscreens have been recognizing a voter's intended vote at a position on the screen that was higher than the point actually touched by the voter. In contrast, upon information and belief, there are no or far fewer complaints by voters whose vote was reflected on a touchscreen at a point lower than the point actually touched by the voter.

24. Upon information and belief, this discrepancy regarding un-calibrated or mis-calibrated touchscreens, and the tendency of such screens to record a voter's touch at a point that was higher on the screen, was known to the State Board of Elections, officials of County Boards of Elections, or should have been reasonably known to them before early voting commenced. This discrepancy became well known to the State Board of Elections and county elections officials during the early voting period.

25. Attached as Exhibit 2 is the Affidavit of Dianna Creel. When Ms. Creel was in line to vote, the person who used the voting machine before her told her to be careful with voting, that the voting machine did not register her vote correctly. When Ms. Creel voted, she pressed the place on the touchscreen that was suppose to register a Republican party vote, however, the voting machine registered her choice as Democratic vote. Ms. Creel again tried to register her vote as a Republican party vote but the voting machine again registered her choice as

a Democratic party vote. The machine did not register Ms. Creel's vote as a Republican party vote until her third attempt to vote. After voting, Ms. Creel complained to the poll judge on site at her voting location. The poll judge contacted Erin Burridge, the Director of the Craven County Board of Elections, and informed her of Ms. Creel's voting issues. Ms. Burridge conceded that the voting issues were a result of a calibration problem with the touchscreen machines.

26. Attached as Exhibit 3 is the Affidavit of Sam Laughinghouse. Mr. Laughinghouse voted on October 21, 2010 at the Craven County Board of Election in New Bern, North Carolina. His voting site used electronic touchscreen voting machines. Mr. Laughinghouse attempted twice to register a straight ticket Republican vote but twice the voting machine registered his choice as a straight ticket Democratic party vote. Mr. Laughinghouse sought help from two poll workers. The two poll workers also tried twice to select the straight ticket Republican options but both times the machine registered their selection as a straight ticket Democratic party vote. Finally on the poll worker's third try, the voting machine successfully registered the selection as a straight ticket Republican party vote. After he voted, a person appearing to be a poll worker performed some work on the machine that Mr. Laughinghouse used and told him that he was "recalibrating" the machine.

27. Attached as Exhibit 4 is the Affidavit of Donovan McLaurin. Mr. McLaurin voted on October 20, 2010 at the Cumberland County Board of Elections in Fayetteville, North Carolina. His voting site used the iVotronics touchscreen voting machines. Mr. McLaurin attempted to vote for the Republican candidate for North Carolina Senate, Wesley Meredith. However, the voting machine registered the vote as a vote for the Democratic candidate, Margaret Dickson. Mr. McLaurin also attempted to vote for the Republican candidate for North

Carolina House, Jackie Warner. However, the voting machine registered his choice as a vote for the Democratic candidate, Rick Glazier. Mr. McLaurin complained to a poll worker who worked with the machine and finally got it to correctly select the candidates for whom Mr. McLaurin wanted to vote.

28. The attached declarations of Dean Lambeth, Joseph R. Flood, and Bernard Kuntz (Exhibits 5, 6, and 7 respectively) document additional instances in which the iVotronic voting equipment failed to accurately record the intended vote of a voter, even after multiple attempts by the voter to touch the correct candidate or party name.

29. It is highly unlikely – indeed incredible – that all of these instances of incorrectly registered votes on the iVotronic equipment were caused by "human error" of the voter, especially where most if not all of these examples involved multiple attempts by the voters to get the equipment to record the correct vote.

30. While the foregoing examples are from individuals who have provided sworn affidavits or declarations, there are undoubtedly numerous other similar incidents where voters have attempted to vote for Republican party candidates and their vote was registered as a vote for the Democratic party candidate.

31. Media reports during the early voting period further document instances of malfunctioning touchscreen voting machines. Attached as Exhibit 8 is an article from ENCToday.com documenting the plight of two Lenoir County voters who attempted to vote for Republican candidates but were nearly thwarted by the touchscreen machines. One of the voters mentioned in the article, Ervin Norville, is a registered Democrat who was attempting to vote a straight party Republican ticket.

10

Case 4:10-cv-00158-H   Document 1   Filed 10/29/10   Page 10 of 19

32. Moreover, for every voter that experiences this problem, recognizes it and records it, as demonstrated by the affidavits and declarations attached to the Complaint, numerous other voters likely used faulty or mis-calibrated touch screens prior to the use of a mis-calibrated screen by voters who reported complaints. Defendants' failure to ensure that every voter has an opportunity to vote on a properly calibrated touch screen has no doubt resulted in many voters casting a ballot electronically that was contrary to the voter's intention. *See* Masucci Declaration, ¶¶ 12-16.

33. Upon information and belief, when a voter unintentionally presses the touchscreen half way between a Republican and a Democratic candidate, the iVotronic equipment automatically records that as a vote for the candidate on the top line which in almost all cases is the Democratic candidate. *See* Masucci Declaration, ¶¶ 9, 14.

34. Further plaintiffs are informed and believe that the problem can be fixed by recalibrating the touch screen equipment. However, recalibration is most likely too late for many voters because the recalibration often does not occur until they have voted and without recognizing that their vote was recorded improperly.

35. The North Carolina State Board of Elections has been fully aware of the problems with the iVotronic voting equipment but has refused to take effective actions to correct the problem causing votes to be registered incorrectly. Attached as Exhibit 9, is a memorandum entitled 2010 General Election/Notes Regarding Equipment Issues in Craven and New Hanover Counties. Upon information and belief, this was prepared by an elections official employed by the North Carolina State Board of Elections. In the memo, the elections official recites in two counties – Craven and New Hanover – no less than fourteen incidents in which the touchscreen voting equipment had to be "recalibrated." In one incident, on October 15, 2010, the staff of the

County Board of Elections identified forty (40) to fifty (50) voters who had possibly used the affected machines. Thus, in that instance alone, 40 to 50 voters potentially had their votes registered for a candidate that they did not intend to vote for, and the problem was not fixed until a "recalibration" of the machine after they had voted.

36. On October 20, 2010, Defendant Bartlett issued a memorandum to all of the County Board of Elections (attached as Exhibit 10). In the memorandum, Bartlett stated incorrectly that there were only "a few reports" of "calibration issues" with the iVotronic machines. Even assuming the correctness of defendant Bartlett's characterization, even a "few" votes incorrectly recorded are too many and unacceptable. Despite the assertion that there were only a few reports of issues, Bartlett recommended that the iVotronic screens be recalibrated at the beginning of each day of one-stop voting.

37. Despite Bartlett's memorandum on October 20, 2010, voters continued to experience problems with the iVotronic voting machines not accurately recording their choice in various elections contests.

38. Attached is the Affidavit of Pamela Jaworski (Exhibit 11). Ms. Jaworski is a citizen and resident of Rutherford County and voted on Wednesday, October 27, 2010 at a voting site using touchscreen voting machines. When Ms. Jaworski attempted to vote a straight ticket Republican party vote, the machine initially registered her vote as a straight ticket Republican party vote. However, after finalizing her voting selections, she reviewed her touchscreen ballot and discovered that the machine had actually registered her vote as a straight ticket Democratic party vote, requiring her to go back and change her ballot to correctly register her intended choice. Had Ms. Jaworski not reviewed her ballot after her initial selection, the voting machine would have incorrectly registered her vote as a straight ticket Democratic vote.

39. Not only have problems with the machines persisted, but media reports indicate that elections officials who have attempted to speak to the media about the problems have been terminated. The attached news article from media outlet WITN (attached as Exhibit 12) reports that two elections workers in Craven County were terminated from their employment after reporting straight party voting problems with the touchscreen voting equipment.

40. Representatives from the North Carolina Republican Party have repeatedly attempted over the past week to persuade the Board of Elections to ensure that voters' choices are being correctly registered by the iVotronic voting machines. Representatives of the North Carolina State Board of Elections have repeatedly assured the NCGOP that the problems are not wide spread and are otherwise fixed. Nonetheless, plaintiff Fetzer and the NCGOP continue to receive reports from voters whose choices are being incorrectly registered by the iVotronic voting machines. The affidavits and declarations attached to this Complaint are representative of the instances in which the North Carolina voter's choices are being thwarted by the iVotronic touchscreen equipment.

41. On October 28, 2010, legal counsel for the North Carolina Republican Party hand delivered a letter to Defendant Bartlett. A true and accurate copy of the letter is attached as Exhibit 13.

42. The letter notified Defendant Bartlett that the calibration problem with the iVotronic voting equipment was wide spread and that the party was hearing of similar cases in Mecklenburg, New Hanover, Randolph, Craven, Cumberland, Wilson, Pender, Forsyth, Lenoir, and other counties.

43. The Party further expressed its concern that the default reaction by the touchscreen system may be violating the equal protection rights of Republican voters. If the

13

incorrectly calibrated machine always defaults to the Democrat section of each voting category, only Republican voters stand to have their vote miscounted to the extent that some or possibly many voters do not catch the mistake before they electronically submit their vote. *See* Masucci Declaration, ¶¶ 9, 13, 16. Moreover, if improperly calibrated systems always or even usually or sometimes default to the Democratic selection, only Republican voters are being forced to give up their right to a secret ballot because only Republican voters are required to ask for assistance from precinct workers when the voting program improperly records their vote. Further, voters in the counties using the iVotronic equipment do not enjoy an equal right with voters in other counties to have their votes accurately reflect their intent.

44. The letter accordingly demanded that the North Carolina State Board of Elections take the following actions:

a. Issue an order to all county and local boards of elections requiring judges and precinct workers to provide written and oral notice to every voter who votes on the iVotronic voting machines that: voters have experienced problems with the iVotronic voting machines accurately recording their voting preferences, voters need to be careful and make sure that the voting machine accurately records their voting preferences, and that voters need to carefully review their ballot for accuracy when given the opportunity to do so at the end of the voting process.

b. Issue an order to all county and local board of elections requiring that all iVotronic personal electronic programs and ballots (i.e., the cartridge that is inserted into the iVotronic voting machine that is used to activate the machine and record the voter's votes) be preserved. This includes preservation of all data on the personal electronic ballots, including metadata and source codes. The Board should also take all other steps to ensure that any electronic data or programs that might reflect calibration of the touch screen or voting intent are also preserved.

c. Issue an order to all county and local boards of election requiring that poll workers in all precincts be required to keep a record of all complaints by voters regarding the iVotronic voting machines, including, but not limited to, the identity of the voter, the time the voter voted, the specific voting machine used by the voter, and the nature of the voter's complaint.

45. As of the date of the filing of the instant lawsuit, the defendants have failed or refused to take measures to effectively ensure that the choice of Republican voters and other voters is accurately recorded by the iVotronic touchscreen voting equipment.

46. Rather, defendants have continued to keep their head in the sand regarding the widespread nature of the touchscreen voting issue and its affect on the federal constitutional rights of North Carolina voters. In an article by WRAL.com, (attached as Exhibit 14) Johnnie McLean, Deputy Director of the North Carolina Board of Elections, was quoted as saying "We don't see a widespread issue". This comment was apparently made even after the NCGOP's letter of October 28 to the defendants.

47. Further, in a letter dated October 28, 2010 from defendant Bartlett, (attached as Exhibit 15) responding to the NCGOP letter dated the same day, defendant Bartlett refused to acknowledge the widespread nature of the problem with the touchscreen voting equipment. Contrary to defendants' assertions, however, plaintiffs believe that the herein-described problems with the iVotronic voting machines will markedly increase on November 2, 2010. The iVotronic voting machine problems that have been documented took place during the early voting period. The News and Observer has reported that 500,000 people voted in the early voting period this year. Voter turnout in 2006, the last mid-term election, was more than two (2) million voters. Thus, on November 2, 2010, it is likely that more than three (3) times the number of voters that voted during the weeks-long early voting period will vote in one day. As such, the danger from iVotronic machine problems will increase exponentially on November 2, 2010.

48. Defendants' actions are violating the constitutional rights of the voters in North Carolina.

49. Violation of a constitutional right is an irreparable harm.

50. Plaintiffs have no other remedy at law.

## PLAINTIFFS' FIRST CAUSE OF ACTION

(Violation of 42 U.S.C. § 1983)

51. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs.

52. Defendants' conduct as alleged above violates 42 U.S.C. § 1983 in that it has proximately caused the deprivation of important federally protected rights to plaintiffs and others similarly situated.

53. Plaintiffs have no adequate remedy at law for violations of their voting rights.

## PLAINTIFFS' SECOND CAUSE OF ACTION

(Violation of the Equal Protection Clause)

54. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs.

55. The Equal Protection Clause of the Fourteenth Amendment provides, "[N]o state shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV.

56. The right to vote is a fundamental right.

57. The right to have one's vote accurately recorded is as fundamental as the right to vote itself.

58. The acts of defendants, as alleged herein, have been taken under color of state law.

59. Because of the problems with the iVotronic voting machines and due to the actions of defendants, as described herein, individuals who vote for non-Republican candidates in counties using iVotronic voting equipment have and will retain the fundamental right to vote.

60. The acts of defendants, as alleged herein, has and will have the effect of denying voters who wish to vote for Republican candidates in counties using iVotronic voting equipment the equal protection of law.

61. The acts of defendants, as alleged herein, has and will have the effect of denying voters who live in counties which use iVotronic voting equipment the equal protection of the laws.

62. Defendants' conduct is denying plaintiffs equal protection of the law.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully move that the Court:

1. Treat this Verified Complaint as a Motion for Temporary Restraining Order and enter a temporary restraining order enjoining defendants from using iVotronic touchscreen voting machines, unless and until the following conditions are met:

    a. That defendants provide a sworn certification to the Court that any software or other electronic errors that are causing the iVotronic touchscreen machines to register votes for one party's candidates as votes for a different party's candidates have been resolved by the iVotronic touchscreen equipment vendor;

    b. That defendants issue an order to all county and local boards of election requiring judges and precinct workers to provide written and oral notice to every voter who votes on the iVotronic machines prior to the voter's entry into the actual voting enclosure that: voters have experienced problems with the iVotronic voting machines accurately recording their voting preferences, voters need to be careful and make sure that the voting machines accurately record their voting preferences, and that voters need to carefully review their ballots for accuracy when given the opportunity to confirm their vote at the end of the voting process;

    c. That defendants issue an order to all county and local boards of election requiring that the following information be preserved:

        - Every iVotronic Voting Machine owned and utilized by the Board of Elections for the 2010 general election

        - Each CF Card associated for each iVotronic Voting Machine utilized by the Board of Elections for the 2010 general election

- Every iVotronic Machine Audit Log

- Every iVotronic Machine PEB device (Personalized Electronic Ballot)

- The Computer System Repository where the voters' data is collected from each PEB Device (Personalized Electronic Ballot) and tabulated

- The Computer System Repository where the voters' data is archived and obtained from every iVotronic Voting Machine owned and utilized by the Board of Elections for the 2010 general election

- Any and all data in association with the iVotronic Voting Machines to include calibration information, when software upgrades were performed and not performed, including notices from ES&S

- Information regarding when the iVotronic Voting Machines Firmware was last updated

- Any and all communication between ES&S, PrintElect and the Board of Elections, including any officer, director, or agent thereof

- Any and all back-up data in connection with the iVotronic Voting Machine owned and utilized by the Board of Elections for the 2010 general election

- Any and all devices, optical media, storage devices, storage cards utilized in connection with information about the iVotronic Voting Machines held by the Board of Elections.

    d.    That defendants issue an order to all county and local boards of election requiring poll workers in all precincts be required to keep a record of all complaints by voters regarding the iVotronic voting machines including but not limited to the identity of the voter, the time the voter voted, the specific voting machine used by the voter, and the nature of the voter's complaint.

2.    Enter a preliminary and permanent injunction in the same form and to the same extent as the Temporary Restraining Order;

3.    Pursuant to the Federal Rules of Civil Procedure, allow plaintiffs leave to engage in limited expedited discovery so that additional evidence can be submitted to the Court on November 1, 2010 in case additional evidence is requested by the Court. In particular, plaintiffs seek leave to take at least one deposition, and to submit no more than five (5) requests for production of documents and requests for admissions to defendants.

4. Award plaintiffs their costs and reasonable attorneys' fees incurred in prosecuting this action;

5. Grant such other relief as the Court deems just and proper.

This the 29th day of October, 2010.

/s/ Thomas A. Farr
Thomas A. Farr
NC State Bar No. 10817
*Attorneys for Plaintiffs*
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
P.O. Box 31608
Raleigh, NC 27622
Telephone: (919) 787-9700
Fax: (919) 783-9412

9353231.1 (OGLETREE)